**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DREW VINCENT BREEN,<br><br>Plaintiff,<br><br>v.<br><br>VICTOR MICHAEL FLOUTY a/k/a VICTOR MICHAEL FLUTIE a/k/a MICHAEL FLUTIE; HARRY HART ENTERTAINMENT LLC; TESTBOARD TECHNOLOGIES, INC.; 3-102-898342 SOCIEDAD DE RESPONSABILIDAD LIMITADA; SAN JUANILLO BEACH COTTAGES LIMITADA, XYZ COMPANIES 1-20 (said entities being fictitious), and JOHN DOES 1-20 (said persons being fictitious),<br><br>Defendants. | Civil Action No.: 25-cv-________<br><br>**COMPLAINT** |

Plaintiff, Drew Vincent Breen ("plaintiff"), by and through his attorneys, Berkowitz, Lichtstein, Kuritsky, Giasullo & Gross, LLC, by way of Complaint against defendants, Victor Michael Flouty a/k/a Victor Michael Flutie a/k/a Michael Flutie, Harry Hart Entertainment LLC, Testboard Technologies, Inc., 3-103898342 Sociedad de Responsabilidad Limitada, and San Juanillo Beach Cottages Limitada ("defendants"), states the following:

**SUMMARY OF THE ACTION**

Over the course of six months in 2024, defendant Mr. Flouty fraudulently induced plaintiff, Drew Breen, to send him $713,500.00 under the guise and misrepresentation that Mr. Breen would receive consideration, including real property and an interest in a business entity, of equal value in

exchange, and that the monies would be used to purchase two adjacent properties in Costa Rica, to construct a wall around those properties and to renovate, repair and update those properties. As set forth more specifically herein, defendant Mr. Flouty never provided, nor ever intended to provide, Mr. Breen with anything in exchange for Mr. Breen sending him $713,500.00; did not use Mr. Breen's monies for their agreed-upon purposes; and converted and misappropriated Mr. Breen's monies including but not limited to by creating two Costa Rican, alter-ego shell companies, transferring Mr. Breen's monies to those entities, and then using those alter-ego shell companies to purchase and hold the two adjacent properties in Costa Rica.

Mr. Flouty's subterfuge was designed not only to convert and steal Mr. Breen's monies, but to place as many hurdles between Mr. Breen and the return of his monies as possible. Mr. Flouty's scheme of using foreign, alter-ego, shell companies to purchase property in a foreign country does not shield him from liability for his malfeasance. Rather, it inculpates him. By way of this proceeding, plaintiff Mr. Breen seeks to invalidate and unwind the transfers of money that he was fraudulently induced to send to Mr. Flouty, an order compelling defendant Costa Rican entities to transfer title of the two subject properties to Mr. Breen or otherwise preventing said entities from transferring title to a third person, and to obtain monetary judgments against the defendants for the damages that they caused him to suffer.

**PARTIES**

1. At all times relevant hereto, plaintiff has been a resident of the State of New Jersey with a residential address of 16 Moore Drive, Flemington, New Jersey.

2. At all times relevant hereto, defendant Victor Michael Flouty a/k/a Victor Michael Flutie a/k/a Michael Flutie has been a resident of the State of New York, with a residential address of 25

East 10th Street, Apartment 5A, New York, New York.

3. At all times relevant hereto, defendant Harry Hart Entertainment LLC ("Harry Hart") was a New York business entity that is owned, operated and/or controlled by defendant Flouty, and over which he exercised complete domination with respect to the transactions at issue and used such domination to commit a fraud against plaintiff Mr. Breen.

4. At all times relevant hereto, defendant Testboard Technologies, Inc. ("Testboard") was a Delaware business entity that was majority owned by defendant Flouty, and over which he exercised complete domination with respect to the transactions at issue and used such domination to commit a fraud against plaintiff Mr. Breen.

5. At all times relevant hereto defendant 3-103898342 Sociedad de Responsabilidad Limitada, was a Costa Rican business entity for which defendant Mr. Flouty was registered as manager, and over which he exercised complete domination with respect to the transactions at issue and used such domination to commit a fraud against plaintiff Mr. Breen.

6. At all times relevant hereto defendant San Juanillo Beach Cottages Limitada was a Costa Rican business entity for which defendant Mr. Flouty was registered as manager, and over which he exercised complete domination with respect to the transactions at issue and used such domination to commit a fraud against plaintiff Mr. Breen.

7. Upon information and belief, and at all times relevant hereto, defendants XYZ Companies 1-20 and John Does 1-20, were entities and persons, whose true identity is unknown to plaintiff, and who were responsible for the conduct complained of herein.

**JURISDICTION**

8. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1332, because there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest.

9. Venue properly lies in this court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to plaintiff's claim occurred in New York, New York.

## FACTS COMMON TO ALL COUNTS

***The Relationship between Mr. Breen and Mr. Flouty***

10. Plaintiff, Mr. Breen and defendant Mr. Flouty have known each other for more than forty-five years.

11. At all times relevant hereto, Mr. Flouty was aware that Mr. Breen suffers from bipolar disorder, that Mr. Breen becomes manic as a result of his bipolar disorder, and that when Mr. Breen is manic, he makes poor, rash decisions with money.

12. In September 2023, Mr. Breen's mother died and left Mr. Breen a substantial amount of money, a fact about which Mr. Flouty became aware shortly thereafter.

13. Although the two individuals had not been in regular contact, Mr. Flouty reached out to Mr. Breen in late 2023 under the guise of reestablishing their friendship.

14. In or around February 2024, under the guise of being Mr. Breen's "close friend," and claiming to have a relationship with him of that "like a brother," defendant Flouty invited Mr. Breen to visit him in Costa Rica.

***The First Transaction***

15. During the visit, Mr. Flouty told Mr. Breen that he was interested in purchasing the house at which he was staying in Costa Rica for $250,000.00, but that he needed to free up some money to buy the house because Mr. Flouty's money was tied up in what he stated was a $750,000.00

investment in defendant Testboard.

16. Mr. Flouty misrepresented to Mr. Breen that defendant Testboard was a legitimate business, was a "very rare" business idea about which Mr. Flouty had expertise, was a "safe" investment, and that additional investors, including friends and family, were expected to fund the company with at least an additional $5,500,000.00 to $10,000,000.00.

17. Based on Mr. Flouty's representations about Testboard, and Mr. Breen's knowledge of Mr. Flouty's experience in the modeling industry which was supposedly the purported business of Testboard, Mr. Breen expressed an interest in becoming an investor.

18. Eventually, the parties discussed an arrangement whereby Mr. Breen would send Mr. Flouty the $250,000.00 he needed to purchase the house in Costa Rica in exchange for Mr. Flouty either transferring Mr. Breen 3.5% of Mr. Flouty's shares in Testboard or providing Mr. Breen a note for $250,000.00 that would be collateralized with Testboard stock.

19. Unbeknownst to Mr. Breen, at the time when Mr. Flouty represented that he would transfer a portion of his interest in Testboard to Mr. Breen, and that said interest had value, Testboard had yet to issue any stock and was undercapitalized.

20. Mr. Flouty created a video that he sent to Mr. Breen's financial advisor in which Mr. Flouty further described the contemplated transaction.

21. Shortly thereafter, Mr. Flouty sent Mr. Breen an email in which he stated that "Arun will forward the stock ownership letter."

22. Mr. Flouty then caused a letter, from someone purporting to be with the accounting firm overseeing the financial aspects of Testboard, to be sent to Mr. Breen, the contents of which were consistent with Mr. Flouty's prior representations.

23. Mr. Flouty also sent Mr. Breen a text message that provided a "revised equity split" and which showed "Drew 3.5%," and which also set forth additional information about potential investors in Testboard.

24. Mr. Flouty also caused another letter to be sent to Mr. Breen from Glenridge Tax Service Inc. that stated in part as follows:

> The founders have leveraged their 35-plus years of experience in the talent scouting industry to create and develop what they believe to be a disruptive force in the talent discovery, representation, and marketing economy. The company is positioned to thrive in the social media and self-creator economy ecosystem, presenting significant potential for success and profitability.

25. Ultimately, on February 23, 2024, as a result of defendant Flouty's fraudulent misrepresentations and inducement, plaintiff sent $250,000.00 to the bank account of defendant Harry Hart, about which entity defendant Mr. Flouty told Mr. Breen was his "business account." This was the first of three wires sent to the bank account of defendant Harry Hart.

26. Defendant Flouty instructed Mr. Breen that when wiring the $250,000.00, Mr. Breen should put "TESTBOARD Inc." in the Memo field.

27. Defendant Flouty never transferred any Testboard stock to Mr. Breen, nor provided anything of value to Mr. Breen for the initial $250,000.00 that Mr. Breen wired on February 23, 2024.

28. On March 15, 2024, $190,000.00 of the initial $250,000.00 that Mr. Breen wired to defendant Harry Hart's bank account in February 2024 was used to purchase real property in Costa Rica, identified by the Costa Rican government as property number 5-19514-000, cadastral plat number G-0070893-2022.

29. Defendant 3-103898342 Sociedad de Responsabilidad Limitada, a Costa Rican company, is the owner of Property number 5-19514-000, with cadastral plat number G-0070782-2022.

30. Defendant Mr. Flouty is registered as manager of defendant 3-103898342 Sociedad de Responsabilidad Limitada.

31. In the transfer deed by which property number 5-19514-000 was purchased, the buyer, defendant 3-103898342 Sociedad de Responsabilidad Limitada, stated under oath that the purchase price was being paid with a special capital contribution in favor of the Company by its shareholder Mr. Flouty. It was also stated that these funds were obtained by Mr. Flouty from his shareholder and general manager positions in Testboard Technologies LLC, and they were kept in Goldman Sachs Bank in New York.

32. Defendant Flouty represented to Mr. Breen that he needed $250,000.00 to purchase the house, and did not disclose to Mr. Breen what he did with the additional $60,000.00 above and beyond the $190,000.00 purchase price of property number 5-19514-000. No defendant returned this $60,000.00 to Mr. Breen, nor has any defendant disclosed what was done with this money or its current whereabouts.

***<u>The Second Transaction</u>***

33. In April 2024, defendant Flouty again took advantage of and deceived Mr. Breen and induced him into sending another $363,500.00, under the guise that defendant Flouty was arranging for Mr. Breen to purchase the property adjoining the aforementioned property number 5-19514-000, which adjoining property contained two cottages.

34. Defendant Flouty misrepresented to Mr. Breen that the cottages would be purchased in Mr. Breen's name, and in fact, defendant Flouty induced Mr. Breen into sending an additional

$13,500.00 (included as part of the overall second transfer of $363,500.00) so that the cottages would purportedly be put into Mr. Breen name by a Costa Rican lawyer defendant Flouty had purportedly involved in the transaction.

35. Here is a text in in March 2024 in which Mr. Flouty provided for same:

Michael cell (19179404848)

I think you understand why I am keeping you on the lowdown until we strike the deal and paperwork, but everything will be in your Corporations name which you will own. xoxo

**3/25/24, 4:48 PM**

36. And here is an April 12, 2024 email from Mr. Flouty in which he says "the company was registered":

Michael cell (19179404848)

This is a lot to process

FYI The cottages and property are being sprayed today I paid already i can't xl it was $400

The company was registered and closing paperwork, research, filing, legal fess have been incurred

Not to mention The down payment of $35k which he agreed to hold on reviving because he trusted me regardless of who and where the funds were coming from. You don't get a refund When a buyer back out unless their is a flow in the deed or buildings . In tbis case there is not. Everything chrckrd. As for the funds from you vs me we discussed several times the advantages of going through my bank.

37. Defendant Flouty even caused Mr. Breen to execute a document that appeared to be a power of appointment over a yet-to-be-formed Costa Rican corporation and which was purportedly

intended to be created to purchase the two cottages set forth above in Mr. Breen's name, and which made it appear that Mr. Breen would be the owner of the company that would purchase the adjoining property.

38. When Mr. Breen expressed to Mr. Flouty that he no longer wanted to purchase the adjoining property, Mr. Flouty refused to cancel the transaction and sent Mr. Breen the following in an email on April 14, 2024:

> ***Moving forward with the purchase without added stress:***
>
> *Let's proceed with the purchase as planned, with the closing as scheduled. The property will remain in your name ( your company), giving you full legal control. I'll act on your behalf through a power of attorney or manage it under a one-year lease agreement. You'll have access to the property without any obligations, while I take care of management and maintenance.*

---

39. Defendant Flouty further told plaintiff that if he, plaintiff, did not want to own the cottages after a year, then Mr. Flouty's purported business partner in Testboard, Michaela Quesada, would buy the cottages from him.

40. The foregoing deceit by defendant Flouty caused plaintiff to send the second of three total wires to defendant Harry Hart on April 17, 2024, this time in the amount of $363,500.00.

41. Defendant Flouty did not cause a Costa Rican corporation owned by Mr. Breen to be created, nor did he effectuate the purchase of the two cottages by or in the name of Mr. Breen.

42. Rather, on August 21, 2024, $342,000.00 of the $363,500.00 that Mr. Breen wired to defendant Harry Hart's bank account on April 17, 2024, was used to purchase real property in Costa Rica, identified as property number 5-223164-000, with cadastral plat number G-1913051-2016.

43. Defendant San Juanillo Beach Cottages Limitada, a Costa Rican company, is the owner of property number 5-223164-000, identified by the Costa Rican government as cadastral plat number G-1913051-2016.

44. Defendant Mr. Flouty is registered as manager of defendant San Juanillo Beach Cottages Limitada.

45. Property number 5-223164-000, with cadastral plat number G-1913051-2016 was not purchased in Mr. Breen's name nor in that of a corporate entity owned by Mr. Breen.

46. In addition to misappropriating $342,000.00 to purchase the adjoining property, defendants misappropriated the additional $21,500.00.

***The Third Transaction***

47. On August 1, 2024, plaintiff was defrauded into sending the third of three wire transfers to the bank account of defendant Harry Hart, this time in the amount of $100,000.00.

48. This time, defendant Flouty represented to Mr. Breen that Mr. Breen would be provided with shares of Testboard stock in exchange for Mr. Breen sending the $100,000.00, about which defendant Flouty represented was to be used to create a compound enclosing the two adjoining parcels of property, i.e., the house and the two cottages, referenced above.

49. At no time has any defendant provided any consideration or anything of value to Mr. Breen for any of the three transfers of money set forth above.

50. At no time has any defendant provided Mr. Breen with stock in defendant Testboard.

51. At no time has any defendant memorialized Mr. Breen having an ownership interest in the parcels of real estate described above.

52. Plaintiff Drew Breen has demanded that defendants return the $713,500.00 he was

defrauded into sending them.

53. Defendants have not returned any of plaintiff Mr. Breen's monies, nor has any defendant informed Mr. Breen of the whereabouts of the money he transferred and which was not used to purchase the real properties.

**FIRST COUNT**
**FRAUDULENT INDUCEMENT**

54. Plaintiff repeats the allegations set forth in preceding paragraphs as if more fully set forth herein.

55. Defendant Mr. Flouty, individually and on behalf of defendant Testboard, knowingly misrepresented to plaintiff Mr. Breen that he, Mr. Flouty, had invested $750,000.00 of his own money in Testboard, that Testboard was a legitimate business entity, that Testboard stock had value and that Testboard was anticipating additional investors who would contribute an additional $5,550,000.00 to $10,000,000.00 to the company.

56. In addition, Mr. Flouty, individually and on behalf of defendant Testboard, knowingly misrepresented to Mr. Breen that Mr. Breen would be receiving Testboard stock in return for Mr. Breen wiring the initial $250,000.00 and the final $100,000.00 to defendant Harry Hart, and that said monies would be used to purchase real property in Costa Rica and to build a wall around the real properties in Costa Rica.

57. Defendant Flouty made such misrepresentations for the purpose of inducing Mr. Breen to rely upon them, and Mr. Breen did justifiably rely upon same and as a result, suffered injury because there is no Testboard stock, no Testboard stock was transferred to Mr. Breen, and Testboard is not a legitimate business entity and is undercapitalized. Moreover, defendant Flouty did not use the monies sent to defendant Harry Hart in the manner agreed upon between the parties.

58. Defendant Flouty knowingly misrepresented to plaintiff Mr. Breen that upon Mr. Breen wiring $363,500.00 in April 2024, Mr. Flouty would effectuate the purchase of certain real property in Costa Rica in Mr. Breen's name or in the name of a company owned by Mr. Breen.

59. Defendant Flouty made such misrepresentation for the purpose of inducing Mr. Breen to rely upon it, and Mr. Breen did justifiably rely upon same and as a result, suffered injury because the monies were not used to purchase property in the name of Mr. Breen or a company owned by Mr. Breen.

## SECOND COUNT
## FRAUDULENT MISREPRESENTATION

60. Plaintiff repeats the allegations set forth in preceding paragraphs as if more fully set forth herein.

61. Defendant Mr. Flouty individually and on behalf of defendant Testboard, knowingly misrepresented to plaintiff Mr. Breen that he, Mr. Flouty, had invested $750,000.00 of his own money in Testboard, that Testboard was a legitimate business entity, that Testboard stock had value and that Testboard was anticipating additional investors who would contribute an additional $5,550,000.00 to $10,000,000.00 to the company.

62. In addition, Mr. Flouty individually and on behalf of defendant Testboard, knowingly misrepresented to Mr. Breen that he would be receiving Testboard stock in return for Mr. Breen wiring the initial $250,000.00 and the final $100,000.00 to defendant Harry Hart, and that said monies would be used to purchase real property in Costa Rica and to build a wall around certain real properties in Costa Rica.

63. Defendant Flouty's knowing misrepresentations in these regards were false and known to be false by defendant Flouty, and were made intentionally by defendant Flouty for the purpose of

misleading Mr. Breen.

64. Mr. Breen justifiably relied upon the misrepresentations, and suffered harm as a result of the misrepresentations because there is no Testboard stock, no Testboard stock was transferred to Mr. Breen, and Testboard is not a legitimate business entity and is undercapitalized. Moreover, defendant Flouty did not use the monies sent to defendant Harry Hart in the manner agreed upon between the parties.

65. Defendant Flouty knowingly misrepresented to plaintiff Mr. Breen that upon Mr. Breen wiring $363,500.00 in April 2024, Mr. Flouty would effectuate the purchase of certain real property in Costa Rica in Mr. Breen's name or in the name of a company owned by Mr. Breen.

66. Defendant Flouty's knowing misrepresentation in this regard was false and known to be false by defendant Flouty, and was made in intentionally by defendant Flouty for the purpose of misleading Mr. Breen.

67. Mr. Breen justifiably relied upon the misrepresentation, and suffered harm as a result thereof because the monies were not used to purchase property in the name of Mr. Breen or a company owned by Mr. Breen.

**<u>THIRD COUNT</u>**
**<u>THEFT / CONVERSION / MISAPPROPRIATION</u>**

68. Plaintiff repeats the allegations set forth in preceding paragraphs as if more fully set forth herein.

69. Mr. Breen transferred $713,500.00 to defendant Flouty by and through the bank account of defendant Harry Hart, and said monies were to be used to purchase real property in Costa Rica for which Mr. Breen was to receive consideration in return of equal value; to purchase real property in Costa Rica that was to be owned by Mr. Breen or a company owned by him; and to construct a

wall around the real properties in Costa Rica for which he was to receive consideration in return of equal value.

70. As set forth more specifically above, Mr. Breen did not receive anything of value in return for his sending the first wire of $250,000.00 to defendant Harry Hart; did not become the owner of the real property for which he sent the second wire of $363,500.00; and did not receive anything of value in return for him sending the third wire of $100,000.00.

71. Rather, defendant Flouty, by and through defendants Harry Hart, Testboard, 3-103898342 Sociedad de Responsabilidad Limitada and San Juanillo Beach Cottages Limitada converted said monies for his own personal use, including but not limited to by transferring said monies to defendants 3-103898342 Sociedad de Responsabilidad Limitada and San Juanillo Beach Cottages Limitada and causing those entities to purchase real property in Costa Rica.

72. At all times relevant hereto, Mr. Breen was the owner and had the immediate right to possession of the $713,500.00 that he wired to defendant Harry Hart, and which monies were subsequently transferred to and used by defendants.

73. Mr. Breen was fraudulently induced to send the aforementioned $713,500.00 to defendants, and did not receive anything of value in return for sending said money to defendants, and moreover, said monies were converted and otherwise misappropriated by defendants.

74. Mr. Breen is entitled to the immediate return and possession of the $713,500.00 that he transferred, and has been harmed by defendants' theft, conversion and misappropriation and their failure to return said monies to him.

**FOURTH COUNT**
**CONSIPRACY**

75. Plaintiff repeat the allegations set forth in preceding paragraphs as if more fully set forth

herein.

76. As set forth above, defendants converted and misappropriated $713,500.00 belonging to Mr. Breen.

77. Defendant Flouty, individually and by and through the defendant entities that he created or over which he exercised complete dominion and used for his own personal interests, used said defendants to perpetrate a fraud upon Mr. Breen through the fraudulent misrepresentations set forth specifically above and the fraudulent inducements that resulted in Mr. Breen transferring $713,500.00.

78. All defendants agreed to and did intentionally conspire to participate in a plan to defraud Mr. Breen and with the purpose of converting and misappropriating the $713,500.00 belonging to Mr. Breen.

79. Defendants converted and misappropriated Mr. Breen's $713,500.00 by not providing Mr. Breen anything of value in exchange, by using said monies in a manner not agreed to by Mr. Breen, by not informing Mr. Breen how certain of said monies were used and by not returning any of said monies to Mr. Breen.

80. As a result of the conspiracy between the defendants, Mr. Breen suffered injury.

## FIFTH COUNT
## ALTER EGO LIABILITY (HARRY HART)

81. Plaintiff repeats the allegations set forth in preceding paragraphs as if more fully set forth herein.

82. At all times relevant hereto, defendant Flouty exercised complete domination over defendant Harry Hart with respect to the transactions set forth herein.

83. Such domination over defendant Harry Hart was used by Mr. Flouty to commit fraud

against Mr. Breen as set forth herein, and defendant Harry Hart's bank account was the recipient of all of Mr. Breen's transfers of money.

84. At all times relevant hereto, Mr. Flouty used defendant Harry Hart to advance his own personal interests and not to further the corporate ends of defendant Harry Hart.

85. Mr. Breen suffered injury as a result of the fraud that Mr. Flouty utilized defendant Harry Hart to commit upon Mr. Breen.

**SIXTH COUNT**
**ALTER EGO LIABILITY (TESTBOARD)**

86. Plaintiff repeats the allegations set forth in preceding paragraphs as if more fully set forth herein.

87. At all times relevant hereto, defendant Flouty exercised complete domination over defendant Testboard with respect to the transactions set forth herein.

88. Such domination over defendant Testboard was used by Mr. Flouty to commit fraud against Mr. Breen as set forth herein, and which was evidenced by Mr. Flouty using a third party accountant purportedly by Testboard to seemingly legitimize Testboard as a viable corporate entity, rather than the shell of Mr. Flouty.

89. At all times relevant hereto, Mr. Flouty used defendant Testboard to advance his own personal interests and not to further the corporate ends of defendant Testboard.

90. Mr. Breen suffered injury as a result of the fraud that Mr. Flouty utilized defendant Testboard to commit upon Mr. Breen.

**SEVENTH COUNT**
**ALTER EGO LIABILITY (3-102-898342 SOCIEDAD DE RESPONSABILIDAD LIMITADA)**

91. Plaintiff repeats the allegations set forth in preceding paragraphs as if more fully set forth

herein.

92. At all times relevant hereto, defendant Flouty exercised complete domination over defendant 3-102-898342 Sociedad de Responsabilidad Limitada with respect to the transactions set forth herein.

93. Such domination over defendant 3-102-898342 Sociedad de Responsabilidad Limitada was used by Mr. Flouty to commit fraud against Mr. Breen as set forth herein, and includes Mr. Flouty creating said foreign company solely for the purpose of purchasing real property in Costa Rica in order to wrongfully convert Mr. Breen's monies.

94. At all times relevant hereto, Mr. Flouty used defendant 3-102-898342 Sociedad de Responsabilidad Limitada to advance his own personal interests and not to further the corporate ends of defendant 3-102-898342 Sociedad de Responsabilidad Limitada.

95. Mr. Breen suffered injury as a result of the fraud that Mr. Flouty utilized defendant 3-102-898342 Sociedad de Responsabilidad Limitada to commit upon Mr. Breen.

**EIGHTH COUNT**
**ALTER EGO LIABILITY (SAN JUANILLO BEACH COTTAGES LIMITADA)**

96. Plaintiff repeats the allegations set forth in preceding paragraphs as if more fully set forth herein.

97. At all times relevant hereto, defendant Flouty exercised complete domination over defendant San Juanillo Beach Cottages Limitada with respect to the transactions set forth herein.

98. Such domination over defendant San Juanillo Beach Cottages Limitada was used by Mr. Flouty to commit fraud against Mr. Breen as set forth herein, and includes Mr. Flouty creating said foreign company solely for the purpose of purchasing real property in Costa Rica in order to wrongfully convert Mr. Breen's monies.

99. At all times relevant hereto, Mr. Flouty used defendant San Juanillo Beach Cottages Limitada to advance his own personal interests and not to further the corporate ends of defendant San Juanillo Beach Cottages Limitada.

100. Mr. Breen suffered injury as a result of the fraud that Mr. Flouty utilized defendant San Juanillo Beach Cottages Limitada to commit upon Mr. Breen.

## NINTH COUNT
## BREACH OF CONTRACT

101. Plaintiff repeat the allegations set forth in preceding paragraphs as if more fully set forth herein.

102. As set forth more specifically above, Mr. Breen and Mr. Flouty, individually and on behalf of defendant Testboard, agreed that in exchange for Mr. Breen sending $713,500.00 to defendant Harry Hart, Mr. Breen would receive consideration of equal value including Testboard stock and ownership of property number 5-223164-000, with cadastral plat number G-1913051-2016.

103. Plaintiff performed his obligations with regard to the parties' agreements by making the aforementioned transfers of money as agreed.

104. Defendants breached their agreements with Mr. Breen by not giving Mr. Breen anything in exchange for his transfers of money including Testboard stock and ownership of property number 5-223164-000, with cadastral plat number G-1913051-2016.

105. As a result of defendants' breaches of contract, Mr. Breen has and will continue to suffer damages.

## TENTH COUNT
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

106. Plaintiff repeat the allegations set forth in preceding paragraphs as if more fully set forth

herein.

107. The agreements between Mr. Breen and defendants contained an implied covenant to act in good faith and to deal fairly with each other.

108. By failing to have provided plaintiff with any consideration in exchange for his three transfers of money, and by failing to have effectuated the purchase of property number 5-223164-000, with cadastral plat number G-1913051-2016 in plaintiff's name, defendants have violated the covenant of good faith and fair dealing.

109. The breaches of the covenant of good faith and fair dealing by defendants have caused and will continue to cause plaintiff to suffer damages.

**ELEVENTH COUNT**
**UNJUST ENRICHMENT**

110. Plaintiff repeats the allegations set forth in preceding paragraphs as if more fully set forth herein.

111. Defendants improperly retained $713,500.00 of the monies transferred to defendant Harry Hart and which monies were subsequently used by the other named defendants.

112. Defendants are not entitled to retain said monies.

113. As a consequence of improperly retaining plaintiff's money, defendants have been unjustly enriched.

114. Plaintiff has demanded repayment of these monies, and no such payment has been made.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff, Drew Vincent Breen, demands judgment against defendants for compensatory, incidental and consequential damages, punitive damages, specific performance ordering the transfer of the subject to real properties to plaintiff, attorneys' fees, interest, costs and

other such relief as the Court deems equitable and just.

Dated: October 31, 2025

By: ______________________
Roy J. Thibodaux III, Esq.

BERKOWITZ, LICHTSTEIN, KURITSKY,
GIASULLO & GROSS, LLC

104 West 40th Street, Suite 500
New York, New York 10018
Phone: (646) 475-8364

75 Livingston Avenue
Roseland, New Jersey 07068
Phone: (973) 325-7800
Fax: (973) 325-7930
rthibodaux@blkgg.com

Attorneys for Plaintiff,
Drew Vincent Breen